UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

In re:                                              Chapter 11

Flatbush Square, Inc.                               Case No. 13-46023 (CEC)

                        Debtor.

# DECISION

APPEARANCES:

David Carlebach, Esq.                               Leonard S. Reiss, Esq.
The Carlebach Law Group                             Toback & Reiss LLP
55 Broadway, Suite 1902                             15 West 44th Street, 12th Floor
New York, New York 10006                            New York, New York 10036
*Counsel for Debtor*                                *Counsel for CBO Inc.*

CARLA E. CRAIG
Chief United States Bankruptcy Judge

This matter comes before the Court on the motion of Flatbush Square, Inc. (the "Debtor"), pursuant to Federal Rule of Bankruptcy Procedure 9023 and Federal Rule of Civil Procedure 59(e), to reconsider an order granting a motion for relief from the automatic stay made by the Debtor's secured creditor, CBO Inc. ("CBO").  Because the Debtor's motion for reconsideration does not raise an argument that could not have been raised in opposition to the original motion, and because it raises arguments already considered and rejected, the motion to reconsider is denied.

## JURISDICTION

This Court has jurisdiction of this core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (G), 28 U.S.C. § 1334, and the Eastern District of New York standing order of reference dated August 28, 1986, as amended by order dated December 5, 2012.  This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Federal Rule of Bankruptcy Procedure 7052.

## BACKGROUND

The Debtor commenced this case under chapter 11 of the Bankruptcy code on October 3, 2013.  On December 17, 2013, CBO filed a motion for relief from the stay (the "Lift Stay Motion").  (Mot. for Relief from Stay, Case No. 13-46023-CEC, ECF No. 25.)  The Lift Stay Motion sought relief from the automatic stay pursuant to 11 U.S.C. § 362(d) with respect to properties located at 1341, 1343, 1345, 1347, 1347A, 1349, 1349A, and 1351A Flatbush Avenue, Brooklyn, New York (the "Properties"). [1]

The Properties are listed in the Debtor's schedules as having a combined value of $4,500,000.  (Schedule A, Case No. 13-46023-CEC, ECF No. 12 at 5.)  CBO disagreed with the

---

[1] Unless otherwise indicated, statutory citations are to provisions of Title 11, U.S.C.; citations to "Rules" are to the Federal Rules of Civil Procedure and to "Bankruptcy Rules" are to the Federal Rules of Bankruptcy Procedure.

Debtor's estimation of the value of the Properties and included an appraisal with the Lift Stay Motion, which valued the Properties at $3,000,000. (Mot. for Relief from Stay Ex. G, Case No. 13-46023-CEC, ECF No. 25-13.)

CBO holds a first mortgage and second mortgage on the Properties securing obligations which, according to CBO, total $4,951,708.41 as of the petition date. (Mot. for Relief from Stay Exs. B and C, Case No. 13-46023-CEC, ECF Nos. 25-4 – 25-9.) Prior to the filing of the Debtor's petition, CBO commenced a foreclosure action in state court in connection with the first mortgage, which resulted in a judgment of foreclosure and sale (the "Foreclosure Judgment"). (Mot. for Relief from Stay Ex. E, Case No. 13-46023-CEC, ECF No. 25-11.) As of the petition date, the Debtor owed $4,521,708.41 on the Foreclosure Judgment, consisting of the judgment amount plus statutory interest under the New York Civil Practice Law and Rules. (Id.; Mot. for Relief from Stay, Case No. 13-46023-CEC, ECF No. 25 at ¶ 12.) CBO asserted that the second mortgage was not included in the Foreclosure Judgment, and that as of the petition date, the Debtor owed $360,000 on the second mortgage. (Mot. for Relief from Stay Ex. F, Case No. 13-46023-CEC, ECF No. 25-12.; Mot. for Relief from Stay, Case No. 13-46023-CEC, ECF No. 25at ¶ 13.) Before the foreclosure sale was conducted, the Debtor filed this bankruptcy case.

In support of the Lift Stay Motion, CBO argued that because the Debtor has no equity in the Properties and because the Properties are not necessary to an effective reorganization, the automatic stay should be lifted under § 362(d)(2). (Mem. of Law in Supp., Case No. 13-46023-CEC, ECF No. 26.) The Debtor opposed the Lift Stay Motion, claiming that the Properties are not declining in value and that CBO has a substantial equity cushion in the Properties, although the Debtor offered no evidence in support of these claims. (Obj. to the Mot. of CBO, Inc. for Entry of an Order Pursuant to 11 U.S.C. § 362(d) Granting CBO, Inc., Relief from the Automatic

Stay, Case No. 13-46023-CEC, ECF No. 31.)  The Debtor also asserted that the Properties are necessary for an effective reorganization, as they are the Debtor's primary assets in this case. Id. Furthermore, the Debtor alleged that CBO took possession of the Properties pre-petition, managing the Properties and collecting rents. Id.  The Debtor argued that because of this, CBO had unclean hands, and for this reason stay relief should be denied. Id.

CBO's reply emphasized that the Debtor's claim that an equity cushion existed in the Properties was unsubstantiated, since the Debtor failed to provide an appraisal or any other evidence of the value of the Properties.   (Reply Aff. in Supp. of CBO's Appl. to Vacate, Case No. 13-46023-CEC, ECF No. 32.)  CBO also refuted the allegation that its pre-petition possession of the property was illegal, citing provisions of an Assignment of Leases and Rents dated September 26, 2005 (the "Assignment of Leases"), which was executed by the Debtor. Id. at 3-6.  The Assignment of Leases granted CBO, in the event of a default, the right to enter, take possession, and manage the Properties. Id. at 3-5.

The Court held a hearing on the Lift Stay Motion on January 15, 2014.  The Court found that, even crediting the Debtor's estimation that the Properties were worth $4,500,000, the Properties lack equity.  (Order Granting Mot. For Relief, Case No. 13-46023-CEC, ECF No. 36.) This is because the total amount due on the Foreclosure Judgment, as of October 3, 2013, was at least $4,521,708.41, more than the Debtor alleged the Properties were worth.  (Mot. for Relief from Stay, Aff. of Elliot Frankel, Case No. 13-46023-CEC, ECF No. 25-2 at ¶ 12.)  Pursuant to § 362(g), therefore, CBO had met its burden to show lack of equity in the Properties, and the burden shifted to the Debtor to show that the Properties "were essential for an effective reorganization *that is in prospect*"; meaning, that there is "'a reasonable possibility of a successful reorganization within a reasonable time.'"  United Sav. Ass'n of Tex. v. Timbers of


Inwood Forest Assocs., 484 U.S. 365, 375-376 (1988) (quoting In re Timbers of Inwood Forest Assocs., Ltd., 808 F.2d 363 (5th Cir. 1987)).

The Debtor failed to do this. In fact, the record showed, if anything, the reverse – that no reorganization is possible in this case. When amounts owed under the second mortgage are added to the amount owed under the Foreclosure Judgment, CBO holds a secured claim of $4,881,708.41. When $70,000 advanced by CBO to pay real estate taxes are added, CBO hold a secured claim of $4,951,708.41. (Mot. for Relief from Stay, Aff. of Elliot Frankel, Case No. 13-46023-CEC, ECF No. 25-2 at ¶ 12.) Accepting the Debtor's valuation of the Properties of $4,500,000, CBO, therefore, holds a deficiency claim of approximately $450,000. See 11 U.S.C. § 506(a)(1) ("An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.") Given that the Debtor's schedules list other unsecured debt totaling $430,000, it appears that CBO's deficiency claim would dominate the class of unsecured creditors and that therefore no plan of reorganization could be confirmed without its consent. See (Schedule F, Case No. 13-46023-CEC, ECF No. 12 at 11); 11 U.S.C. § 1126(c) (providing that a class of claims has accepted a plan when creditors holding two-thirds in amount and a majority in number of voting claims in the class have accepted the plan).

However, it is not necessary to find that CBO holds a blocking deficiency claim in order to conclude that relief from the automatic stay is required. When the Debtor's valuation of the Properties is considered, together with the amount of the Foreclosure Judgment, it is apparent that there is no equity in the Properties. At that point, under §§ 362(g) and 362(e), it was

5

incumbent upon the Debtor to come forward with evidence, at a minimum, showing that "there is a reasonable likelihood that the party opposing relief from the [automatic] stay will prevail at the conclusion of [a final hearing on the motion]". 11 U.S.C. § 362(e)(1)[2]. The Debtor failed to do this, and the automatic stay was lifted.

On February 12, 2014, the Debtor filed this motion to reconsider the order lifting the stay (the "Motion to Reconsider"). (Mot. to Reconsider the Order of This Court of January 29, 2014, Granting CBO, Inc.'s Mot. for Relief from the Automatic Stay, Case No. 13-46023-CEC, ECF No. 42.) The Motion to Reconsider seeks reconsideration of the order lifting the stay pursuant to Rules 59(e) and 60(b), which are incorporated through Bankruptcy Rules 9023 and 9024. Id. On February 20, 2014, CBO filed opposition to the Motion to Reconsider. (Opp'n Objection, Case No. 13-46023-CEC, ECF No. 44.) On February 21, 2014, the Court entered an order closing the record and marking the matter as "submitted". (Order, Case No. 13-46023-CEC, ECF No. 46.)

## ARGUMENTS

The Debtor argues that CBO violated § 542 by failing to turn over the Properties to the Debtor, and that the Debtor is in the process of (a) investigating the viability of the Mortgagee's claims, (b) obtaining an appraisal, and (c) filing its plan of reorganization.[3] The Debtor also contends that the amount claimed by CBO is incorrect, because the Debtor was not credited with

---

[2] 11 U.S.C. § 362(e)(1) provides: "Thirty days after a request under subsection (d) of this section for relief from the stay of any act against property of the estate under subsection (a) of this section, such stay is terminated with respect to the party in interest making such request, unless the court, after notice and a hearing, orders such stay continued in effect pending the conclusion of, or as a result of, a final hearing and determination under subsection (d) of this section. . . . . The court shall order such stay continued in effect pending the conclusion of the final hearing under subsection (d) of this section if there is a reasonable likelihood that the party opposing relief from such stay will prevail at the conclusion of such final hearing."

[3] The Motion to Reconsider refers to § 543, which addresses turnover by a custodian. CBO is not a custodian, as defined under the Bankruptcy Code, and as such § 543 is not applicable. Nonetheless, the Court will construe any references to § 543 in the Motion to Reconsider as a reference to § 542, which addresses turnover by entities other than a custodian.

paydowns, and further alleges its appraisal will demonstrate that the Debtor has equity in the Properties. (Mot. to Reconsider the Order of This Court of January 29, 2014, Granting CBO, Inc.'s Mot. for Relief from the Automatic Stay, Case No. 13-46023-CEC, ECF No. 42.)

CBO opposes the Motion to Reconsider, asserting that the Debtor has not pointed to a change in the law, new evidence, any error of law or fact, or a manifest injustice, as required by Rule 59(e).

<p style="text-align:center">DISCUSSION</p>

"A motion for reconsideration is 'an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'" Corines v. Am. Physicians Ins. Trust, 769 F. Supp. 2d 584, 593-594 (S.D.N.Y. 2011) (quoting In re Initial Public Offering Sec. Litig., 399 F. Supp. 2d 298, 300 (S.D.N.Y. 2005), aff'd sub nom. Tenney v. Credit Suisse First Boston Corp., Nos. 05 Civ. 3430, 05 Civ. 4759, & 05 Civ. 4760, 2006 WL 1423785, at *1 (2d Cir. 2006)). See also Schonberger v. Serchuk, 742 F. Supp. 108, 119 (S.D.N.Y. 1990) (motions made pursuant to Rule 59(e) must adhere to stringent standards to prevent "wasteful repetition of arguments already briefed, considered and decided"). The determination of whether a motion for reconsideration should be granted is within the sound discretion of the court. See Spa 77 G L.P. v. Motiva Enters. LLC, 772 F. Supp. 2d 418, 437 (E.D.N.Y. 2011).

Bankruptcy Rule 9023 provides that a motion to alter or amend a judgment under Rule 59(e) must be filed no later than 14 days after the entry of the judgment. Fed. R. Bankr. P. 9023. Pursuant to Rule 54(a), made applicable by Bankruptcy Rule 7054, the order lifting the stay constitutes a "judgment" that may be reconsidered under Rule 59 because it is an "order from which an appeal lies." Fed. R. Civ. P. 54(a); Fed. R. Bankr. P. 7054. See Pegasus Agency v. Grammatikakis (In re Pegasus Agency), 101 F.3d 882 (2d Cir. 1996) ("An order lifting the

automatic stay is final and appealable . . ..").  The order lifting the stay was entered on January 29, 2014, and the Motion to Reconsider was filed on February 12, 2014, 14 days later.  Because the Debtor's motion was filed 14 days after entry of the order lifting the stay, the motion must be reviewed under Rule 59(e), and not Rule 60.  See Lyell Theatre Corp. v. Loews Corp., 682 F.2d 37, 41 (2d Cir. 1982) ("where a post-judgment motion is timely filed and 'calls into question the correctness of that judgment it should be treated as a motion under Rule 59(e), however it may be formally styled.'") (quoting Dove v. Codesco, 569 F.2d 807, 809 (4th Cir. 1978)).

      Rule 59, made applicable to this adversary proceeding pursuant to Bankruptcy Rule 9023, permits a party to make a motion "to alter or amend a judgment."  Fed. R. Civ. P. 59(e).  Rule 59(e) does not provide specific grounds for amending or reconsidering a judgment.  See Fed. R. Civ. P. 59(e).  The Second Circuit has held that "[t]he major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (internal quotations and citation omitted); Doe v. New York City Dep't of Social Servs., 709 F.2d 782, 789 (2d Cir. 1983).  Under the "clear error" standard, relief is "appropriate only when a court overlooks 'controlling decisions or factual matters that were put before it on the underlying motion' and which, if examined, might reasonably have led to a different result."  Corrines v. Am. Physicians Ins. Trust, 769 F. Supp. 2d 584, 593-94 (S.D.N.Y. 2011) (quoting Eisemann v. Greene, 204 F.3d 393, 395 n.2 (2d Cir. 2000)).  "[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995).  It is well settled that "[a] motion for reconsideration is

neither an occasion for repeating old arguments previously rejected nor an occasion for making new arguments that could have been previously advanced." Associated Press v. U.S. Dep't of Def., 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005).

A. CBO's Alleged Violation of § 542

The Debtor asserts that the Lift Stay Motion should have been denied because CBO did not turn over control of the Properties to the Debtor upon commencement of this case, as required by § 542. The Debtor alleged, in response to the Lift Stay Motion, that CBO "engaged in illegal and contumacious conduct with respect to its commandeering of the Properties both pre- and post-petition." (Obj. to the Mot. of CBO, Inc. for Entry of an Order Pursuant to 11 U.S.C. § 362(d) Granting CBO, Inc., Relief from the Automatic Stay, Case No. 13-46023-CEC, ECF No. 31 at ¶ 36.) The Debtor asserted that because of these alleged illegal actions, CBO should be denied relief under the maxim that "he who comes into equity must come with clean hands." Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co., 324 U.S. 806, 814 (1945).

These arguments lack merit, and were in any event previously considered and rejected. The record shows that CBO's pre-petition possession of the Properties was provided for under the terms of its Assignment of Leases. (Reply Aff. in Supp. of CBO's Appl. to Vacate, Case No. 13-46023-CEC, ECF No. 32 at 3-6.) Section 542 provides that "[A]n entity . . . in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, . . . shall deliver to the trustee, and account for, such property . . .." 11 U.S.C. § 542(a). Although it appears that CBO did not comply with this requirement, in that CBO remains in possession of the Properties, the Debtor has cited no authority to support the proposition that this prevents CBO from seeking relief from the automatic stay, or relieves the Debtor of its burden under § 362(g). A review of the case law uncovers no support for the

Debtor's proposition that a party who has violated the automatic stay may not seek stay relief, while multiple cases have found stay relief appropriate notwithstanding those circumstances.  E.g. Molson v. Standard Fed. Bank (In re Molson), 1997 WL 133320 (6th Cir. Mar. 21, 1997) (affirming both the district court and the bankruptcy court, which re-opened a chapter 13 case to annul the automatic stay to validate a creditor's post-petition foreclosure sale where the creditor "ignored" the bankruptcy filing); Smith v. Bank of N.Y. Mellon (In re Ceralde), 2013 WL 4007861 (B.A.P. 9th Cir. 2013) (affirming the bankruptcy court's order granting the creditor's motion to annul the automatic stay to validate a post-petition foreclosure sale of debtor's property where the creditor had knowledge of the bankruptcy prior to the sale); In re Eastlick, 349 B.R. 216 (Bankr. D. Idaho 2004) (determining that the equities were best served by annulling the automatic stay with respect to the debtor's ex-wife after determining that she violated the automatic stay); In re Stockwell, 262 B.R. 275 (Bankr. D. Vt. 2001) (granting nunc pro tunc relief from the automatic stay where creditor violated the stay and had constructive, if not actual knowledge of the bankruptcy); In re Donovan, 266 B.R. 862, 871-872 (Bankr. S.D. Iowa 2001) (holding that creditor's tax deed, acquired post-petition, was void as it violated the automatic stay, but lifting the stay to allow creditor to obtain a valid tax deed); In re Franck, 171 B.R. 893, 895 (Bankr. D. Idaho 1994) (denying retroactive stay relief for actions taken in violation of the automatic stay but stating that the court would grant non-retroactive stay relief if the party made such a motion).

    Moreover, unclean hands must involve a party's "inequitableness or bad faith *relative to the matter in which he seeks relief,*" which can be "any willful act *concerning the cause of action*."  Precision, 324 U.S. at 814-815 (emphasis added).  A court should only apply the equitable defense of unclean hands where the conduct of the party seeking relief "has immediate

10

and necessary relation to the equity that he seeks in respect of the matter in litigation." Keystone Driller Co. v. Gen. Excavator Co., 290 U.S. 240, 245 (1933).  Here, no evidence has been proffered that CBO'S conduct prevented the Debtor obtaining an appraisal or from explaining how it will reorganize, and such evidence could not be introduced for the first time on this motion in any event.  Scheidelman v. Henderson (In re Henderson), 2010 WL 4366021, at *5 (Bankr. N.D.N.Y. 2010) ("[A] party cannot use a Rule 59(e) motion to cure its own procedural failures or to introduce new evidence or advance arguments that could and should have been presented originally to the court.") (quoting Jiminez v. Rodriguez (In re Rodriguez), 233 B.R. 212, 219-220 (Bankr. D.P.R. 1999)).

B.  The Debtor's Other Arguments

The Debtor argues that CBO did not give the Debtor credit for significant paydowns, and therefore overstated the amount owed.  The Debtor also states that it holds an option contract with CBO which allows the Debtor "to pay down its mortgage at a principal only price."  (Mot. to Reconsider the Order of This Court of January 29, 2014, Granting CBO, Inc.'s Mot. for Relief from the Automatic Stay, Case No. 13-46023-CEC, ECF No. 42 at ¶ 11.)   The Debtor asserts that "this agreement will be the fulcrum of the Debtor's plan of reorganization" and that the Debtor will cure any defaults.  Id.

The Debtor provides no evidence whatsoever in support of its contention that the amount claimed by CBO is overstated.  In any event, the Foreclosure Judgment plus statutory interest exceeds the value attributed by the Debtor to the Properties in the petition.  This Court is precluded by the Rooker-Feldman Doctrine, and by principles of res judicata, from reducing the Foreclosure Judgment amount.  See Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005) (holding that Rooker-Feldman applies to "cases brought by state-court losers

complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."); Charell v. Gonzalez (In re Gonzalez), 241 B.R. 67, 72 (S.D.N.Y. 1999) ("Res judicata, or claim preclusion, operates to prevent a party from re-litigating a claim after the claim has already been decided by a court of competent jurisdiction." ).

Nor did the Debtor present any evidence in support of its contention that the Debtor has an option to satisfy its mortgage by paying the principal only, or any evidence that funding would be available to repay the $3,000,000 principal amount of the mortgage. Even if it had, however, this would not establish grounds for reconsideration, as it would constitute evidence that should have been presented in response to the Lift Stay Motion. See In re Henderson, 2010 WL 4366021, at *5. "[T]o the extent that facts stated by Debtors in their Motion are not in the original record, neither this Court nor any reviewing court on appeal need consider same." In re Amagansett Family Farm, Inc., 2011 WL 5079493 (Bankr. E.D.N.Y. 2011) (citing Rafter v. Liddle, 288 Fed. Appx. 768, 769 (2d Cir. 2008)). "It is well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple' . . .." Sequa Corp. v. Gbj Corp., 156 F.3d 136, 144 (2d Cir. 1998). On a motion to reconsider, facts not raised at the original hearing will not be considered facts that the Court overlooked. See Rafter, 288 Fed. Appx. At 769.

In the Motion to Reconsider, the Debtor also states that it has completed an appraisal which demonstrates that it has equity in the Properties. (Mot. to Reconsider the Order of This Court of January 29, 2014, Granting CBO, Inc.'s Mot. for Relief from the Automatic Stay, Case No. 13-46023-CEC, ECF No. 42 at ¶ 11.) No appraisal was filed with the Motion to Reconsider. Even if the Debtor did provide one, however, it would not constitute a basis to reconsider the

order lifting the stay, since on a motion to reconsider, facts not raised at the original hearing will not be considered facts that the Court overlooked.  See Rafter, 288 Fed. Appx. At 769.

## CONCLUSION

For the foregoing reasons, the Debtor's motion pursuant to Bankruptcy Rule 9023 is denied.  A separate order will issue.



**Dated: Brooklyn, New York**
**April 9, 2014**

_____
**Carla E. Craig**
**United States Bankruptcy Judge**